**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **ELENA BYRD ex rel. M.J.J.** | |
| **Plaintiff,** | |
| v. | No. 15 C 11648 |
| **NANCY A. BERRYHILL, Acting Commissioner of Social Security,**[1] | Magistrate Judge Mary M. Rowland |
| **Defendant.** | |

**MEMORANDUM OPINION AND ORDER**

Elena Byrd, mother of M.J.J., filed this action seeking reversal of the final decision of the Commissioner of Social Security denying M.J.J.'s application for Supplemental Security Income under § 1614(a)(3)(C) of the Social Security Act (Act). 42 U.S.C. § 1382c(a)(3)(C). The parties have consented to the jurisdiction of the United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c), and filed cross-motions for summary judgment. For the reasons stated below, the Commissioner's decision is affirmed.

**I. THE SEQUENTIAL EVALUATION PROCESS**

To recover Supplemental Security Income (SSI), a claimant must establish that he or she is disabled within the meaning of the Act. *York v. Massanari*, 155 F. Supp.

---

[1] On January 23, 2017, Nancy A. Berryhill became Acting Commissioner of Social Security and is substituted for her predecessor as the proper defendant in this action. Fed. R. Civ. P. 25(d).

2d 973, 976–77 (N.D. Ill. 2001). "A child qualifies as disabled and therefore may be eligible for SSI if he has a 'medically determinable physical or mental impairment, which results in marked and severe functional limitations' and the impairment 'has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Hopgood ex rel. L.G. v. Astrue*, 578 F.3d 696, 699 (7th Cir. 2009) (quoting 42 U.S.C. § 1382c(a)(3)(C)(i)).

The Social Security Administration (SSA) employs a three-step analysis to decide whether a child meets this definition. 20 C.F.R. § 416.924(a). First, if the child is engaged in substantial gainful activity, his or her claim is denied. *Id.* Second, if the child does not have a medically severe impairment or combination of impairments, then his or her claim is denied. *Id.* Finally, the child's impairments must meet, or be functionally equivalent, to any of the Listings of Impairments (Listings) contained in 20 CFR pt. 404, subpt. P, app. 1. *Id.* To find an impairment functionally equivalent to one in the Listings, an ALJ must analyze its severity in six age-appropriate categories: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. *Id.* § 416.926a(a). To functionally equal the Listings, the ALJ must find an "extreme" limitation in one category or a "marked" limitation in two categories. An "extreme" limitation occurs when the impairment interferes very seriously with the child's ability to independently initiate, sustain or complete activities. *Id.* § 416.926a(e)(3)(I). A "marked" limitation is one which interferes seriously with the

child's ability to independently initiate, sustain, or complete activities. *Id.*
§ 416.926a(e)(2)(I).

## II. PROCEDURAL HISTORY

On May 23, 2011, Elena Byrd filed an application for SSI on behalf of her minor child, M.J.J., who was born on October 27, 2007, alleging that he became disabled on May 3, 2011. (R. at 19, 288). The application was denied initially and upon reconsideration, after which Ms. Byrd filed a timely request for a hearing. (*Id.* at 19, 143–48, 154–61). On November 9, 2012, September 25, 2013, and May 9, 2014, M.J.J. and Ms. Byrd, represented by counsel, testified at a hearing before an Administrative Law Judge (ALJ).[2] (*Id.* at 19, 43–142). At the November 9, 2012, and May 9, 2014 hearings, the ALJ also heard testimony from Ellen J. Rozenfeld, Psy.D, a medical expert (ME). (*Id.* at 19, 67–76, 136–40, 195–98). At the September 25, 2013, and May 9, 2014 hearings, the ALJ also heard testimony from Milford F. Schwartz Jr., M.D., another ME. (*Id.* at 19, 76–91, 110–17, 236).

On June 25, 2014, the ALJ denied M.J.J.'s request for benefits. (R. at 19–37). Applying the three-step sequential evaluation process, the ALJ found at step one that M.J.J. has not engaged in substantial gainful activity since May 23, 2011, his application date. (*Id.* at 22). At step two, the ALJ found that M.J.J.'s history of congenital discoid right meniscus status post arthroscopic surgery, suspected cyst with intermittent discomfort, and history of developmental delays with persistent bor-

---

[2] The hearing was twice continued to allow Plaintiff's attorney an opportunity to complete M.J.J.'s documentation and bring it up to date and. (R. at 19).

derline speech language deficits are severe impairments. (*Id.*). The ALJ also found that M.J.J.'s anemia and rheumatoid arthritis are nonsevere impairments. (*Id.*). At step three, the ALJ determined that M.J.J. does not have an impairment or combination of impairments that meet or medically equal the severity of any of the Listings. (*Id.* at 23–24). Specifically, the ALJ concluded that M.J.J. does not meet or medically equal either Listing 101.03 or Listing 112.02. (*Id.*). The ALJ then determined that M.J.J. does not have an impairment or combination of impairments that *functionally equal* the severity of any of the Listings. (R. 23–63). In making this determination, the ALJ heavily relied on the opinions of Drs. Rozenfeld and Schwartz, who found that M.J.J. has, at most, less than marked limitations in all six of the functional equivalency domains. (*Id.* at 28–36).

The Appeals Council denied M.J.J.'s request for review on October 28, 2015. (R. 1–6). M.J.J. now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. *Villano v. Astrue*, 556 F.3d 558, 561–62 (7th Cir. 2009).

### III. STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is authorized by § 405(g) of the Act. In reviewing this decision, the Court may not engage in its own analysis of whether the plaintiff is severely impaired as defined by the Social Security Regulations ("regulations"). *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Nor may it "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute [its] own judgment for that of the Commissioner." *Id.*

The Court's task is "limited to determining whether the ALJ's factual findings are supported by substantial evidence." *Id.* (citing § 405(g)). Evidence is considered substantial "if a reasonable person would accept it as adequate to support a conclusion." *Indoranto v. Barnhart*, 374 F.3d 470, 473 (7th Cir. 2004); *see Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014) ("We will uphold the ALJ's decision if it is supported by substantial evidence, that is, such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (citation omitted). "Substantial evidence must be more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). "In addition to relying on substantial evidence, the ALJ must also explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005).

Although this Court accords great deference to the ALJ's determination, it "must do more than merely rubber stamp the ALJ's decision." *Scott v. Barnhart,* 297 F.3d 589, 593 (7th Cir. 2002) (citation omitted). "This deferential standard of review is weighted in favor of upholding the ALJ's decision, but it does not mean that we scour the record for supportive evidence or rack our brains for reasons to uphold the ALJ's decision. Rather, the ALJ must identify the relevant evidence and build a 'logical bridge' between that evidence and the ultimate determination." *Moon v. Colvin,* 763 F.3d 718, 721 (7th Cir. 2014). Where the Commissioner's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele v. Barnhart,* 290 F.3d 936, 940 (7th Cir. 2002).

## IV. RELEVANT MEDICAL EVIDENCE

M.J.J. was born on October 22, 2007, and was six years old at the time of his SSI application. His knee pain is first documented in the record at Friend Family Health Center in January 2011, when he was three years old. (R. at 357). Treatment notes indicate that his knees had caused him intermittent pain starting in June 2010. (*Id.* at 357, 470). M.J.J.'s history of delayed speech and language was first documented at John H. Stroger Jr. Hospital in May 2011. (*Id.* at 372). The doctors at Stroger also diagnosed him with juvenile arthritis and referred him to a rheumatology clinic. (*Id.* at 660, 679).

In July 2011, M.J.J. presented to Melissa Tesher, M.D., at the Pediatric Rheumatology Clinic at University of Chicago Medical Center. (R. at 660). Dr. Tesher noted that M.J.J. had been "stiff" since birth, and that his stiffness was accompanied by fussiness and frequent crying. (*Id.*). She concluded that M.J.J. suffers from chronic musculoskeletal pain, which severely interferes with his ability to function and sleep, and has significant social and behavioral issues accompanied by a speech delay. (*Id.* at 661). On August 10, Dr. Tesher again concluded that M.J.J. has a speech delay. (*Id.* at 659).

M.J.J. appeared for a speech and language evaluation on August 8, 2011, with Jennifer J. Knudson, M.A., at the request of the Agency. (R. at 376–80). Knudson administered a Goldman-Fristoe Test of Articulation, which measures the articulation of consonant sounds in children. (*Id.* at 377). The test revealed that M.J.J.'s oral mechanism, fluency, and voice appeared to be normal; however, his articulation

skills were mildly delayed, affecting his ability to functionally communicate in his environment. (*Id.* at 379). This placed him in the 20th percentile for articulation and at the age equivalency of two years and nine months, one full year younger than his chronological age. (*Id.* at 377). Knudson concluded that M.J.J.'s oral mechanism, fluency and voice appear within normal limits, but his articulation skills are mildly delayed and his expressive language skills are moderately delayed, which are likely to affect his ability to functionally communicate in his environment. (*Id.* at 379).

On the same day, M.J.J. presented for a Pediatric Consultative Exam with David W. Miller, M.D., at the request of the Agency. (R. 383–87). M.J.J.'s caregivers complained of knee inflammation. (*Id.* at 383–84). Dr. Miller reviewed M.J.J.'s medical files and performed an examination. (*Id.* at 383). M.J.J. exhibited full range of motion, his gait was normal and unassisted, and he required no assistive devices to ambulate. (*Id.* at 386). Dr. Miller opined that M.J.J.'s right knee was normal. (*Id.*).

On August 29, Lenore Gonzalez, M.D., and Carol Varney, a speech-language pathologist (SLP), reviewed the medical record and completed a Childhood Disability Evaluation. (R. at 390–95). They concluded that M.J.J.'s impairments were severe but did not meet, medically equal, or functionally equal the Listings. (*Id.* at 390). Specifically, they opined that M.J.J. had no limitations in attending and completing tasks, moving about and manipulating objects, or caring for himself. (*Id.* at 392–93). However, due to his documented delay in speech and communication, Dr. Gonzalez and Varney found that he had a less than marked limitation in acquiring and using information and interacting and relating with others. (*Id.* at 392). They

also found that he had a less than marked limitation in his health and well-being due in part to his right knee pain. (*Id.* at 393). These findings were later affirmed by DDS consultants Cosme Cagas, M.D., and Diane Lowry, SLP. (*Id.* at 396–97).

In October 2011, M.J.J. was diagnosed with discoid meniscus, for which he underwent surgery on October 27. (R. at 409).

M.J.J. complained of leg pain in June 2012. (R. at 446–50). The examination, however, was largely unremarkable. (*Id.* at 448-49). In September 2013, M.J.J. complained of chronic intermittent pain to his right hip, thigh, and knee. (*Id.* at 580). A physical examination, however, was "largely unremarkable." (*Id.*). A mental status evaluation found poor attention span and concentration. (*Id.* at 728). An October 2013 mental status evaluation was generally unremarkable, but he did exhibit minor difficulty articulating "r" sounds, and had poor attention span and concentration, and lower than age expected judgment. (*Id.* at 722–23).

The record also contains two undated opinions from Alanna Nzoma, M.D, who had treated M.J.J. since August 2011. (R. at 484–91). Dr. Nzoma opined that M.J.J. has no limitations in interacting or relating with others or caring for himself, less than marked limitations in moving about and manipulating objects and health and well-being, and did not opine regarding his abilities in attending and completing tasks. (*Id.* at 489–91). Dr. Nzoma also concluded that M.J.J. has a marked limitation in acquiring and using information, noting that his mother and school teacher both stated that he suffers from pain in his legs which causes him to cry and experience difficulty walking. (*Id.* at 489).

At the May 9, 2014 hearing, Dr. Rozenfeld testified regarding M.J.J.'s IQ, his limitations in each of the six domains, and whether or not he met the Listings based on her review of the record. She reported that M.J.J. has a Stanford-Binet verbal IQ of 77, non-verbal IQ of 86, and a full scale IQ of 77.[3] (R. 71). Dr. Rozenfeld opined that these results were consistent with the record, placing M.J.J. at "borderline low average ability." (*Id.*). Although M.J.J. had some variability in his test scores, Dr. Rozenfeld found that they were not deficient enough to assign him a marked limitation in acquiring and using information. (*Id.* at 74). She also opined that the record did not support a finding that M.J.J. had a marked limitation in attending and completing tasks. (*Id.* at 75). She noted that M.J.J. has benefited from interacting with others at school and from speech therapy and therefore would, at most, have a less than marked limitation in interacting and relating with others. (*Id.*). She opined that M.J.J. would have less than marked or no limitations in the remaining three domains. (*Id.*). At the same hearing, Dr. Schwartz also testified regarding M.J.J.'s limitation in each of the six domains. (*Id.* at 89–90). He opined that M.J.J. would have a less than marked limitation in moving and manipulating objects and health and well-being. (*Id.* at 90). He concluded M.J.J. would have no limitation in the remaining four domains. (*Id.*). Finally, Dr. Rozenfeld opined that M.J.J. did not meet or medically equal Listing 112.02 because the medical record demonstrated

---

[3] The Stanford-Binet test is "a method of testing the mental capacity of children and youth by asking a series of questions adapted to, and standardized on, the capacity of normal children at various ages." *Dorland's Medical Dictionary*, http://www.dorlands.com (last visited January 12, 2017).

that he is able to focus, has great listening skills, is well behaved, and gets along with others. (*Id.* at 74).

## V. DISCUSSION

M.J.J. raises two main arguments in support of his request for reversal of the ALJ's determination that he is not disabled: (1) the ALJ failed to properly address the opinions of his treating and consultative physicians, and (2) the ALJ erred in finding that he does not meet or medically equal Listing 112.02 or Listing 112.05.

### A. ALJ's Failure to Weigh Opinion Evidence Was Harmless Error

M.J.J. vaguely contends that the ALJ failed to give proper weight to the opinions of his treating and consultative physicians. (Dkt. 11 at 5–8). But Plaintiff neither identifies which doctors' opinions were improperly evaluated nor how their opinions would have changed the ALJ's decision. (*Id.*); *see Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004) ("It is axiomatic that the claimant bears the burden of supplying adequate records and evidence to prove their claim of disability."); 20 C.F.R. § 404.1512(c) ("You must provide medical evidence showing that you have an impairment and how severe it is during the time you say that you were disabled."). Nevertheless, the Court will evaluate the opinions given by Dr. Nzoma—Plaintiff's treating physician—and SLP Knudson and Dr. Miller—the two consultative examiners.

#### 1. *Dr. Nzoma*

In two *undated* opinions, Dr. Nzoma opined that M.J.J. cannot continuously stand for at least six hours and has a marked limitation in acquiring and using in-

formation.[4] (R. at 485, 489). By rule, "in determining whether a claimant is entitled to Social Security disability benefits, special weight is accorded opinions of the claimant's treating physician." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 825, 123 S. Ct. 1965, 155 L.Ed.2d 1034 (2003). The opinion of a treating source is entitled to controlling weight if the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." 20 C.F.R. § 404.1527(d)(2); *accord Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008). A treating physician typically has a better opportunity to judge a claimant's limitations than a non-treating physician. *Books v. Chater*, 91 F.3d 972, 979 (7th Cir. 1996); *Grindle v. Sullivan*, 774 F. Supp. 1501, 1507–08 (N.D. Ill. 1991). "More weight is given to the opinion of treating physicians because of their greater familiarity with the claimant's conditions and circumstances." *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). Therefore, an ALJ "must offer 'good reasons' for discounting a treating physician's opinion," and "can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice." *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010) (citing 20 C.F.R. § 404.1527(d)(2); other citation omitted).

While the ALJ did not discuss Dr. Nzoma's opinions, the Court finds the omission to be harmless. *See Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010) ("The

---

[4] Plaintiff incorrectly asserts that Dr. Nzoma also opined that Plaintiff has a marked limitation in attending and completing tasks. (Dkt. 11 at 3). To the contrary, Dr. Nzoma declined to determine whether Plaintiff has any limitations in this domain. (R. at 489).

doctrine of harmless error . . . is applicable to judicial review of administrative decisions."). An error is harmless when it is "predictable with great confidence that the agency will reinstate its decision on remand because the decision is overwhelmingly supported by the record though the agency's original opinion failed to marshal that support." *Id.*; *see McKinzey v. Astrue,* 641 F.3d 884, 892 (7th Cir. 2011) ("Thus, we look at the evidence in the record to see if we can predict with great confidence what the result on remand will be."). "But the fact that the administrative law judge, had she considered the entire record, *might* have reached the same result does not prove that her failure to consider the evidence was harmless." *Spiva*, 628 F.3d at 353 (emphasis added). Thus, the harmless error analysis is prospective and "not . . . an exercise in rationalizing the ALJ's decision and substituting [the court's] own hypothetical explanations for the ALJ's inadequate articulation." *McKinzey*, 641 F.3d at 892.

With regard to Dr. Nzoma's opinion that Plaintiff cannot continuously stand at least six hours in an eight-hour period (R. at 485), the ALJ thoroughly examined the medical record and concluded that M.J.J. consistently exhibited a lack of swelling and had a normal gait and range of motion (*id.* at 25–26). For example, in November 2012, Plaintiff's teacher asserted that M.J.J. has "no problem" moving his body, demonstrating strength, coordination and dexterity, managing pace of physical activities, showing a sense of his body's location and movement in space, integrating sensory input with motor input, and planning, remembering and executing controlled motor movements, and only a "slight problem" with moving and manipulat-

ing objects. (*Id.* at 34 (citing *id.* at 337). The ALJ also cited an October 2013 examination, which indicated that M.J.J. walks independently with no components of antalgia, has no signs of instability, has "excellent" range of motion, and has "quite unremarkable" hip motions. (*Id.* at 704). In February and March 2014, he was observed running, playing, and keeping up with his peers in the school gymnasium. (*Id.* at 26, 34 (citing *id.* at 353, 734)). In a March 2014 examination, M.J.J. had full range of motion in all extremities, and despite some tenderness in his knee, he had no effusion, bruising, swelling, or instability; he was able to bear his full weight and ambulated with a steady gait. (*Id.* at 26 (citing *id.* at 755). Thus, the Court concludes "with great confidence" that were the case to be remanded, the ALJ would properly discount Dr. Nzoma's opinion that Plaintiff cannot continuously stand at least six hours in an eight-hour period.

Similarly, the ALJ's failure to consider Dr. Nzoma's opinion that Plaintiff has a marked limitation in acquiring and using information is harmless. Even if the ALJ gave controlling weight to this opinion, M.J.J. would still not be found disabled. To functionally equal the Listings, the ALJ must find a "marked" limitation in *two* categories. And no other medical source found that Plaintiff had a marked limitation in any category.

### 2. *Knudson*

In her August 2011 examination, SLP Knudson opined that Plaintiff's articulation skills are mildly delayed and his receptive and expressive language skills are moderately delayed. (R. at 379). The ALJ cannot ignore the medical opinion from an

examining speech language pathologist but must explain the weight given to this opinion in his decision. *Walters v. Astrue*, 444 F. App'x 913, 917 (7th Cir. 2011); *McKinzey*, 641 F.3d at 891; 20 C.F.R. § 404.1527(f).

While the ALJ did not explicitly weigh Knudson's opinion, he acknowledged her conclusion that Plaintiff had moderate expressive and receptive language delay. (R. at 29). The regulations "do not [require] ALJs [to] explicitly mention every doctor's name and every detail in their reports." *Walters*, 444 F. App'x at 917. Further, the ALJ thoroughly discussed the variability in psychometric test scores, including Knudson's, and why they support only a less than marked limitation in acquiring and using information. (R. at 29). For example, in November 2011, Plaintiff's vocabulary tested in the borderline range, his receptive skills were low average, and his word recognition and expressive language were within the average range. (R. at 29 (citing *id.* at 71, 546–47)). M.J.J.'s IQ scores ranging from 75–85 are indicative of borderline to low average ability. (*Id.* at 29 (citing *id.* at 71, 554)). The ALJ found these scores are consistent with Knudson's opinion as well as other tests and evaluations conducted in February and March 2014. (*Id.* at 29 (citing *id.* at 73, 734, 752). And both the DDS consultants and the MEs concluded that Knudson's opinion was consistent with a less than marked limitation in acquiring and using information.[5]

---

[5] Plaintiff contends that the ALJ improperly relied on these nonexamining opinions. (Dkt. 11 at 8). But there is no prohibition on the ALJ relying on the opinions of nonexamining doctors. *See Collins v. Barnhart*, 114 F. App'x 229, 233 (7th Cir. 2004) (ALJ "appropriately relied on the nonexamining source opinion"); *Ronning v. Colvin*, No. 13 CV 8194, 2015 WL 1912157, at *5 (N.D. Ill. Apr. 27, 2015) (ALJ may reasonably rely on DDS report); Social Security Ruling (SSR) 96-6p, at *3 (opinions from state-agency doctors may be entitled to the most weight).

(R. at 71–74, 90, 392, 396). Thus, the Court concludes "with great confidence" that even if the ALJ gave great weight to Knudson's opinion, his decision would not change.

### 3. *Dr. Miller*

Plaintiff contends that on examination, Dr. Miller "found inflammation of [Plaintiff's] knee." (Dkt. 11 at 3). To the contrary, Dr. Miller's examination result was unremarkable—Plaintiff's joints had a normal range of motion without erythema, effusion, or tenderness; his gait was normal and unassisted; and he required no assistive devices to ambulate. (R. at 386). Indeed, Dr. Miller explicitly concluded that M.J.J.'s "knee was normal on exam." (*Id.*). Thus, even if the ALJ properly considers Dr. Miller's opinion and gives it great weight, the Court is convinced "with great confidence" that the ALJ's decision would not change.

## B. M.J.J. Fails to Demonstrate that He Meets Listings 112.02 or 112.05

The Listings identify and describe impairments that the SSA considers severe enough to prevent an individual from doing any gainful activity, regardless of age, education, or work experience. 20 C.F.R. § 404.1525(a). The claimant bears "the burden to present medical findings that match or equal in severity all the criteria specified by a listing." *Knox v. Astrue*, 327 F. App'x 652, 655 (7th Cir. 2009) (citing *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990)); *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006). The regulations do not require that an ALJ include every possible Listing that might apply. Nor has the Seventh Circuit mandated such a requirement. *Rice v. Barnhart*, 384 F.3d 363, 369–70 (7th Cir. 2004).

M.J.J. first asserts that he meets the requirements of Listing 112.02 pertaining to organic mental disorders. (Dkt. 11 at 8–9). In order to meet this Listing, M.J.J. must show that he meets the requirements of both section A and section B. *Zebley*, 491 U.S. at 530 ("For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify.") (emphasis in original). Defendant acknowledges that M.J.J. meets section A of Listing 112.02. (Dkt. 15 at 10). However, Plaintiff has not met his burden to demonstrate that he meets the section B criteria, which requires that he show marked impairment in two of the following: age-appropriate cognitive/communicative function, age-appropriate social functioning, age-appropriate personal functioning, or marked difficulties in maintaining concentration, persistence and pace. 20 C.F.R. pt. 404, subpt. p, app. 1, § 112.02(B)(2). Plaintiff contends he has marked language deficits, an IQ of 68, and a marked impairment in social functioning, as he cannot communicate effectively. (Dkt. 11 at 9). But Plaintiff cites to no record support for his assertions, and as discussed above, the record shows that M.J.J. has no marked limitations in any domain.

Similarly, Plaintiff fails to demonstrate that he meets Listing 112.05(D). A claimant meets Listing 112.05(D) if he has significantly subaverage general intelligence, and specifically "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or mental impairment imposing an additional and significant limitation of function." 20 C.F.R. pt. 404, subpt. P, app. 1, § 112.05(D). Without any

record support, Plaintiff contends he has an IQ of 68. (Dkt. 11 at 9). To the contrary and as the ALJ found, the record reveals that M.J.J.'s verbal IQ was 77, his nonverbal IQ was 86, and his full-scale IQ was 77. (R. at 29, 71, 515).

## VI. CONCLUSION

For the reason's stated above, M.J.J.'s Motion for Summary Judgment [11] is **DENIED** and Defendant's Motion for Summary Judgment [14] is **GRANTED**. Pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision is affirmed.

E N T E R:

Dated: February 21, 2017

*Mary M Rowland*

MARY M. ROWLAND
United States Magistrate Judge